Milligan, J.,
delivered the opinion of the court:
The claimants seek by their jjetition to recover $3,563.09, which they allege is due them on a written contract with the *200 Government of the United States, dated the 6th of April, 1864, and the court finds the facts to be—
1. The contract provides “ that the said Charles and John Cooper shall furnish the engine and machinery hereafter described, and erect the same in a building to be provided by the United States at Giesboro, near Washington, D. C., for a steam-mill of capacity sufficient for cutting hay, grinding grain, and mixing, cooking, and delivering the same, properly prepared for feeding, in quantities sufficient for rations for ten thousand horses per day, said engine and machinery to be of the best material and workmanship, and in accordance to the following specifications
Here follow the specifications, which are set out with great particularity; and among which it is provided that the mill shall be furnished “ with hay-cutters sufficient to the requisite amount of hay, and with elevators and conveyors sufficient for handling the hay and grain and prepared feed, on the most economical and labor-saving plan.”
2. “ The main driving-belt is to be four-ply rubber, and twenty-four inches wide.”
3.' The contract further provides that the United States “ shall furnish the materials for and erect the mill-building and engine-house suitable in size and construction for the reception of the above-described engine and machinery, and internally arranged and constructed according to the plans of the said Coopers, avoiding all unnecessary expense to either party, and completed and in readiness, so that the said Coopers shall have a reasonable time to erect and put in operation their machinery within the time specified in this agreement, in which the said Coopers of the second part are to deliver, set, and erect, and put in complete successful operation, in all their parts, the above-described engine and machinery, within ninety days from date of contract.”
4. It is also provided that, when the mill shall be completed, a board of inspectors shall be appointed by the chief quartermaster, Cavalry Bureau; and if the inspectors pronounce “ the mill in all its parts to be as contracted for, and fully agree to the specifications, and capable of performing the amount of labor specified, it shall be received and become the property of the United States.”
5. The price which the United States agreed to pay the *201 claimants for tbe erection of tbe mill, machinery, &c., was $26,500; one-balf, $13,250, when tbe engine and machinery were delivered at G-iesboro, and the other half, $13,250, when the mill was inspected and received by the board of inspectors.
6. After the foregoing stipulations' aré set forth in the contract, the following is added :
“ In addition to the above agreement and stipulation, it is agreed by the parties that for furnishing and erecting in said mill the necessary machinery and fixtures for elevating, mixing, and cooking by steam, in conveyors, the cut hay and ground grain, and delivering the same, properly prepared for feeding, in the quantities named in the agreement, the said Coopers of the second part are to be allowed and paid, in addition to the amount above specified, a reasonable price and compensation, which is to be estimated and determined by the above-named board of inspectors.”
7. On the 28th of July, 1861, when the machinery arrived at Giesboro, a voucher for $13,250 was regularly issued to the claimants, on which they received and receipted for the money. And thereafter, on the 8th of October following, they in like manner received and receipted for the further sum of $10,000, leaving $3,250° of the stipulated price to be paid when the mill should be inspected and received by the board of inspectors provided for in the contract.
8. Afterward, on the 31st of October, 1861, the chief quartermaster of the Cavalry Bureau appointed a board of inspectors under the contract, to inspect the mill, machinery, &c., who returned the following report:
“ The board proceeded to examine the mill described in the contract accompanying the above order.
“After a careful inspection and measurement of said mill, its engine, boilers, shafting, pulleys, mills, elevators, and driving-belt, with all their appliances, were found to be of the capacity in all particulars as required in said contract, and that the said mill is in complete and successful operation, and fully completed in every particular for cutting hay, grinding grain, and mixing and delivering the same in quantities specified in said contract, which, in the opinion of this board, completes that part of said contract which has for its consideration the sum of $26,500.
“And the board furthermore find that the part of said con *202 tract 4 for erecting in said mill the necessary machinery for cooking in conveyors the cut hay and ground grain, and delivering the same, properly prepared for feeding,’ which has for its consideration 1 a reasonable price and compensation, which is to be estimated and determined by this board,’ is not yet completed, except the elevators and machinery for mixing, which are in operation, and we recommend that a future board be appointed to assess said ‘price and compensation’ whenever said cooking process is completed.
“WE EBDWOOD PRICE,
u Major, A. A. G., and A. Ins. Gen. Cav., Bureau.
“L. LOWRY MOORE,

u Ga/pt. and A. Q. M. and Depot Q. M., Giesboro.

“ JOSEPH T. POWER,
“ Lieut. 155 P. V. and A. A. Q. M., Cav. Bureau.”
9. On the 2d of November, 1864, after the coming in of the inspectors’ report, the balance of the unpaid contract price, $3,250, was duly paid, to the contractors and receipted for by them.
10. On the payment of this sum, nothing appears to have been said respecting the equitable compensation for the extra material furnished and work performed under the additional clause of the contract. The matter rested until the 9th of January, 1865, when the claim now set up in this suit was presented to the' Quartermaster-G-eneral’s Office, in the form of the following bill:
No. 1. November 1. — To increase in cost of 5-ply belt over 4-ply, 80J feet..... $100 00
No. 2. November 1. — To 2 meal elevators, including 160¿ feet 8-inch belting, buckets, 4 pulleys, shafting, wood-work, &c. 1,075 00
No. 3. November 1. — To 1 hay-elevator, including 144 feet 6-inch belting, 50 15-inch buckets, pulleys, shafting, wood-work, &c. 772 50
No. 4. November 1. — To 1 feed-carrier, 72 feet 22-inch belt-drums, shafting, rollers, gearing, &c. 678 75
No. 5. November 1. — To 23 cast steam-mill picks, at 69 00
*203 No. 6. November 1. — To foundation for setting engine and boiler, including stone and brick.$1,250 00
No. 7. November 1. — To 4 sets extra cutter-knives.. 28 00
No. 8. November 1. — To bill rendered for dressing stone, chisels, &c... 185 77
No. 9. November 1. — To items of bill rendered for booping tanks, wrenches, shovel, hinges, &c. 75 50
4,234 52
Contra. — By quartermaster’s bill rendered. 671 43
3,563 09
11. This account was referred by the Quartermaster’s Office to Captains Moore and Browning, as a board of inspectors, for adjustment. They disagreed, and made separate reports, and the case is now here for adjudication.
The court further find that the material mentioned in the foregoing bill of account was furnished, and the labor therein stated performed, as charged, and that the prices were fair and. reasonable.
Items 1, 5, 7, 8, and 9 were either directly ordered by the officers in charge of the work, or the material supplied and work performed with their knowledge and consent.
Items 2, 3, and 4 were necessary to, and directly connected with, the cooking apparatus. These several items were made and put up on the plan and draughts of the defendants.
The work included in item 6 was performed under the eye and with the approval of the officers in charge of the work.
There is also .proof tending to show that the cooking apparatus, which was erected under the plans of the defendants’ agents, did not prove very successful, and was finally removed from the building.
On these facts the defendants, through their Attorney-General, resist a recovery on the following grounds: 1st. That most or all of the items in the account, to recover which this action is instituted, are embraced in the body of the contract, and have been fully paid for; and 2d. The material furnished and work performed were valueless, and therefore no recovery can be had for them.
*204 A careful inspection of the contract under which this action is prosecuted leaves no doubt on the mind of the court that the parties, when they entered into it, had a primary and a secondary object in view. The primary or principal purpose was the erection of a mill of the description mentioned in the contract, with the engine and machinery necessary to propel it. All this part of the contract has been fulfilled to the entire satisfaction of the board of inspectors, who examined the work, and the consideration of $26,500, on which it rested, fully paid and satisfied.
The secondary object is plainly expressed in the additional clause of the contract set forth in the facts. The work to be performed under this clause of the agreement had for its consideration “ a reasonable price and compensation,” which was also to be determined by a board of inspectors. Two inspectors were appointed by the defendants, who failed to agree, and each returned a separate report, differing in several particulars from each other. No authoritative decision was made of the value of the work by the board, and no steps have since been taken by the Government to settle the dispute in the way provided in the contract. The claimants had no power to appoint another board of inspectors, nor were they bound to wait on the defendants more than a reasonable time. This time they have given without, result, and now seek redress in this court.
Nothing is put in issue by this suit but the items charged in the account which was submitted to the inspectors; and those items naturally divide themselves into two classes: First, those which fall directly under the additional clause of the contract; and, second, those which are extra, and have been received and used by the Government.
The firs t class include items numbered 2, 3, and 4, which together amount to the sum of $2,526.25; and the second includes items numbered 1, 5, 6, 7, 8, and 9, which together amount to $1,708.28.
The first class of items doubtless is referred to by the Attorney-General in his first objection to a recovery, which seems to be predicated on a mistaken apprehension of the scope of the contract. Items 2, 3, and 4 appear to have been connected directly with the cooking apparatus, and therefore covered by the additional clause of the contract, which is distinct and separate from the primary object of the agreement. Those items were not inspected by the board that received the mill, engine, *205 machinery, &e., which had for their consideration the sum of $26,500, mentioned in the contract, because they were not then entirely finished. They have since been completed and used by the Government, and although this part of the machinery does not appear to have proved very successful, it was put up under the contract, and according to the plans and draughts furnished by the officers and agents of the defendants, and no steps have been taken by them to have the work condemned, or the material returned to the claimants. They are therefore bound to, pay for them.
The second class of items, which in the aggregate amount to the sum of $1,708.27, may be classed as extras. It is true a few of these items do not strictly fall under the head of extra work, but they are all included under the general principle of law applicable to this class of charges. The rule in such case, as recognized by this court in Grant’s Case, (5 C. Cls. R., p. 71,) and which is sustained by the elementary books, is as follows:
u The party cannot recover for extra work, or even for better materials used, if he had not the authority of the other party therefor. But the authority will be implied if the employing party saw or knew of the work or materials in time to object and stop the work without injury to himself, and not under circumstances to justify his belief that no change was intended, and did not object, but received and held the benefit of the same; and if he received from the employed an estimate of the cost of such extra work, and then ordered it, the party employed might be bound by such estimate. And if the changes were such that the employer need not infer that they involved any other additional expense, and he was not so informed, an express assent to them does not imply a promise to' pay for them, because it is fair to suppose that he believed they were done under the contract, and assented to only on those terms. If the changes necessarily imply an increased price, and he expressly authorizes, or silently but with full knowledge assents to them, he is then bound to pay for them.”
The principle here announced in the latter part of the rule is applicable to each one of the items included in the second class of the account, and justly carries the judgment of the court in favor of the claimants.
The increase in the price of the main driving-belt was not only known to the agents of the defendants in charge of the *206 work, but the 5-ply belt is shown in the proof to hare been ordered by them to take the place of the 4-ply mentioned in the contract. So, also, with the items 5, 7, 8, and 9 marked in the account. All these several items, except No. 7, are admitted in the separate reports of both the inspectors, but at reduced prices. The proof now shows the prices charged for each one of these several items was fair and reasonable; and that item 7 was ordered by the Government agents, and the extra cutter-knives purchased under their order, and they are still retained by them.
The only remaining item in the account is No. 6, which relates to the foundation for setting the engine and boiler. This work was, under the contract, to be performed by the defendants. They failed to perform it in time, and the claimants, with, the defendants’ assent, performed the work for them. It is true, the Government gave some aid in the execution of this work, but the proof distinctly shows that the work the claimants performed, and the materials furnished by them, were fairly worth the sum charged.
We hold, therefore, the claimants entitled to recover the whole account, which, after deducting the sum of $671.43, shown on its face, leaves $3,563.09, for which judgment will be entered.
Drake, Oh. J., and Peck, J., did not sit on the trial nor take part in the decision of this case.